UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MORRIS BART, L.L.C.**                                                        **MISCELLANEOUS ACTION**

**VERSUS**                                                                            **NUMBER: 25-2301**

**MMA LAW FIRM, P.L.L.C.**                                           **SECTION: "B"(5)**

### ORDER AND REASONS

Before the Court is Plaintiff Morris Bart, L.L.C.'s, Motion to Quash Subpoenas. (Rec. doc. 1). The Motion is opposed by Defendant MMA Law Firm, P.L.L.C. (Rec. doc. 8). Morris Bart filed a reply memorandum. (Rec. doc. 11).[1] The Court initially scheduled oral argument but cancelled that hearing as a result of developments in the underlying litigation pending in the Southern District of Texas. (*See* rec. doc. 19). In the Order canceling oral argument, the Court promised that an Order and Reasons on the present motion would follow. These are the reasons.

### I.     THE RELEVANCE AND IMPORTANCE OF THIS COURT'S PRIOR RULINGS ON THE PRESENT MOTION

The parties to this matter, as well as all lawyers and judges involved in the many associated and underlying cases here and in the District and Bankruptcy Courts in the Southern District of Texas, are amply familiar with the underlying facts and proceedings and I will not restate them in full detail here. The present motion seeks to quash subpoenas ostensibly aimed at trying to discover whether Morris Bart attorneys violated a preliminary

---

[1] The Court has also received and reviewed a transcript of a hearing held before the District Judge in the Southern District of Texas on numerous matters that bear directly on this case. The Court had requested that counsel for the parties provide it with a copy of the transcript of that hearing should it become available, and it was filed into the record of this case by counsel for MMA. (Rec. doc. 18 (Transcript of Motion Hearing, Dec. 2, 2025, Case No. 4:24-cv-2793, S.D. Tex., Dec. 2, 2025)).

injunction issued by the Bankruptcy Judge that prohibited Morris Bart from taking any actions to have a court other than the Texas Bankruptcy Court determine MMA's right to recover fees and/or costs in its former cases. (Civ. A. No. 24-ap-3127, S.D. Tex. Bankr. (Rec. doc. 31)). That question, and indeed MMA's very right to recover fees and costs from successor law firms in its former cases <u>from this District</u>, are currently before District Judge Hanen in the Southern District of Texas. (*See, e.g.,* Civ. A. No. 4:24-cv-2793, S.D. Tex.)

Owing to MMA's and its counsel's rather obvious strategic and tactical decisions in these various matters, two different federal judges in Texas and I have been placed in potential conflict on several related, if not identical, issues. Based on my review of all these records and the recent transcript, along with the altogether appalling history around MMA's misconduct in this District, I cannot help but conclude that the current state of procedural chaos between these two courts is exactly what the MMA team has been trying to achieve. Here, then, I will attempt to do my part to bring some clarity to this situation while ruling on the pending motion.

The present matter and motion arises from MMA's efforts in the Texas Bankruptcy Case to recover from Morris Bart[2] fees and costs from Hurricane Ida cases that the latter took over from the former in this District. I have reviewed many pleadings in the MMA Texas bankruptcy, including those in adversary proceedings in that District involving a case settled during a settlement conference ordered by me in this District. (*See, e.g.*, Civ. A. No. 24-ap-3127, S.D. Tex. Bankr.). Most recently, I have read the transcript of a hearing just held

---

[2] This case involves only a single law firm, Morris Bart L.L.C. These observations, however, should be read to apply across the board to any ongoing attempts by MMA to recover fees and/or costs from any firm from cases in this District.

before the District Judge in that case that, in large part, involved the parties' and the Court's attempts to discern the meaning of multiple orders issued by <u>this</u> Court.

So to clarify (yet again), here is what we meant in those orders.

The intention of the undersigned in *Ricks*[3] and *Foskey*,[4] the District Judge in *Ricks*,[5] and the entire Eastern District bench sitting *en banc*[6] was to hold that MMA has ***NO*** rights to recover fees or costs arising from any cases in this District – <u>under any theory, against anyone, period</u>.[7]

The *en banc* Order issued by this Court, which was by its very terms intended to address MMA's efforts in the Bankruptcy Court to obtain fees from cases pending in this District, was absolutely clear in its scope:

> This Order is intended to notify parties, their counsel, and the Court's appointed neutrals that (1) no portion of settlement proceeds is required to be held in trust in this District and (2) insurers should immediately cease insisting on listing MMA as a payee on settlement checks, <u>as that entity has no rights to fees and/or costs in this District by virtue of its knowing and voluntary pre-petition waiver of said rights.</u>

(General Order Regarding Settlement of Former MMA cases, Dec. 19, 2024, available on the webat:

https://www.laed.uscourts.gov/sites/default/files/pdfs/Order_MMA_Opinions.pdf.).

Yet MMA persists, insisting it retains rights in this District that it affirmatively waived. A recent exchange between Judge Hanen and counsel for MMA perfectly underscores MMA's strategy to avoid this Court's orders:

---

[3] Ricks v. Imperial Fire & Cas. Ins. Co., Civ. A. No. 23-2844, 2024 WL 1750738, at **2-3 (E.D. La. Apr. 5, 2024).
[4] *Foskey v. Am. Modern Prop.& Cas. Ins. Co.*, Civ. A. No. 23-5316 (E.D. La. (Rec. doc. 21).
[5] Ricks v. Imperial Fire & Cas. Ins. Co., Civ. A. No. 23-2844, 2024 WL 1740172, at *1 (E.D. La. Apr. 23, 2024).
[6] General Order Regarding Settlement of Former MMA cases, Dec. 19, 2024, available on the web at: https://www.laed.uscourts.gov/sites/default/files/pdfs/Order_MMA_Opinions.pdf.

3

>THE COURT: Well, are you bound by the en banc order?
>
>MR. PATTERSON: I don't know what part of it or what you're referring to.
>
>THE COURT: Well, isn't there a December 19th, 2024, en banc order from the Eastern District of Texas that basically says you don't get any fees?
>
>MR. PATTERSON: We don't get any fees <u>from the clients. We can't go over after the clients</u>.

(Rec. doc. 18-1 at 17)(emphasis added).

To be clear, this Court's multiple orders mean that MMA cannot "go after the clients" – <u>or anyone else</u> – for fees and/or costs from cases in this District.

That is the law of the case(s) in this District and these orders should have long ago put to rest questions MMA continues to press in Texas.

Why? Because none of these orders was ever appealed, including this Court's Order in *Ricks*, which was the Court's original pronouncement that MMA had affirmatively waived its rights in this District. That's important because MMA was a respondent in that case, appeared through counsel in that case, filed pleadings directed at the issue in that case, and argued the matter at hearings in that case. If it disagreed with the Court's findings and rulings, it could and should have appealed them. It did not, choosing instead to lay in the weeds to ultimately relitigate the issue in a different state, in a different forum, before a different judge.

The very idea that MMA – a cabal of lawyers who violated every conceivable professional guidepost to ethical practice in this State – are now portraying themselves as victims before another Court that never had to deal in real time with their depredations is

offensive. The full extent of the damage these charlatans caused in this State is not yet calculable – it may never be. But they're no victims – that is for sure.

For further clarity, the reservation of rights that I included in my Order in *Ricks*, which was (1) adopted by the District Judge, (2) clarified in *Foskey*, and (3) further clarified in the above-referenced *en banc* order of this Court, **<u>ONLY</u>** reserved to MMA potential claims against "partner" firms that MMA claimed it had made deals with that may have been breached by those firms. The two firms were expressly named by MMA in that regard: Daly & Black and the Galindo firm. Morris Bart was not named as such, and I have seen no evidence that that firm (or any others) ever had an agreement of any kind with MMA that could have been breached.

This is now the fourth time this Court is saying the exact same thing. And, to be clear, this is all not just to repeat itself or continue to clarify that which should already be clear. As to the subpoenas subject of this motion, this history underlines their fundamental impropriety. These subpoenas arise directly from MMA's efforts to collect successor fees from cases in this District to which this Court has repeatedly said <u>it has no interest</u>. That MMA consciously elected to undertake this gambit in a different court does not change this core fact. It is seeking to recover something this Court has held, pre-petition, that it has no right to seek or recover. That these subpoenas were issued in service of that doomed mission makes them, in my view, improper *ab initio*.

The question, however, is what to do about them, given developments that post-date their issuance.

5

## II.    THE PARTIES' ARGUMENTS

The ultimate disposition of this motion is straightforward for reasons that will be explained. A brief visit on the parties' respective arguments is nonetheless merited.

Morris Bart makes two arguments in support of its motion: (1) that the subject subpoenas seek privileged communications between various parties, law firms, and judges (me, primarily) and (2) that the Eastern District of Louisiana is the proper venue to bring a motion seeking to quash these particular subpoenas. (Rec. doc. 1-1). Morris Bart also requests (in its Reply Memorandum) that this Court award it attorneys' fees and costs as a sanction against MMA's counsel for issuing the subpoenas in improper form. (Rec. doc. 11 at 7).

In response, MMA makes its own arguments, which I will list here in order but, by way of preview, will discuss below in a slightly different order.

First, MMA argues that the Eastern District of Louisiana is not the appropriate venue for a motion to quash the subpoenas because the "location identified in the subpoenas for compliance with the document production is the email address of counsel, received in Houston, Texas." (Rec. doc. 8 at 6) (emphasis added).

Next, MMA urges that no privilege can attach to the subpoenaed documents. As a preamble to that argument, it makes the altogether strange argument that "it would be improper for this Court [that would be me], as a participant in the mediation and alleged to have received the communications to determine any issue related to the privilege." (*Id.*).[8]

---

[8] For reasons that will be explained, the Court need not analyze the question of privilege here. However, it is worth explaining that, when the claimed privilege arises from this Court's own order setting its settlement conferences and its own rules regarding the confidentiality of position papers and *ex parte* discussions with the Court during said settlement conferences, it is frivolous to suggest that this Court should play no role in determining the applicability of any privilege or the protection of the privileged material it ordered to be created in the first place.

Third, MMA argues that Morris Bart does not have standing to challenge these subpoenas because they are directed at third parties.[9]

Finally, MMA says the motion is moot because (1) Ms. Vorhaben has already complied with the subpoena directed to her and (2) the other subpoenas "have been withdrawn or were never served." (Rec. doc. 8 at 1).

### III. RESOLVING THESE ISSUES

#### A. *The "Place of Compliance"*

The subject deposition subpoena to Tessa Vorhaben lists as the place of compliance a "GoToMeeting" telephone number and login code. (Rec. doc. 1-2). The subpoenas duces tecum at issue all list the place of compliance only as the email address of MMA's counsel, with no physical address or location included. (Rec. docs. 1-3, 4, 5). These subpoenas are facially invalid.

Rule 45(c) governs here:

> **(c) Place of Compliance.**
>
> **(1) *For a Trial, Hearing, or Deposition*.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>
> **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>
> **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
>
> > **(i)** is a party or a party's officer; or
>
> **(ii)** is commanded to attend a trial and would not incur substantial expense.**(2) *For Other Discovery*.** A subpoena may command:

---

[9] As explained below, the Court need not determine whether Morris Bart has standing to bring the present motion because it decides the motion on other grounds. The question of standing is closely intertwined with and dependent upon that of privilege, which the Court also passes on here.

7

>   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
>
>   **(B)** inspection of premises at the premises to be inspected.

Fed. R. Civ. P. 45(c).

A deposition subpoena that list only a "Zoom," "GoToMeeting" or other remote link or login information as the place of compliance is facially invalid. As Judge Hanen recently found in a different case,

> Several courts have held that a Rule 45 subpoena which fails to list a physical place of compliance—including those that list videoconferencing technology as the place of compliance for a deposition or that list an email address as the place of compliance for a document production—fail to comply with Federal Rule of Civil Procedure 45(a)(1)(A)(iii) and are facially void. *See, e.g., Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667, at *1, *7-8 (S.D. Cal. July 18, 2022) (holding that "[a] valid subpoena must list a specific place of compliance" which must "be a physical place subject to geographical limits and capable of being measured according to mileage," and rejecting the plaintiffs argument that "there is no requirement to appear physically when a deposition occurs virtually"); *Frobe v. UPMC St. Margaret*, 2021 WL 9628848, at *1 (W.D. Pa. July 13, 2021) (noting that the subpoena listed the place of compliance for the deposition as "Zoom Videoconferencing;" and concluding that "Zoom Videoconferencing is not a place" but rather "is a method of taking the deposition," such that the plaintiffs were required "to modify the subpoena to have the place of the deposition changed so it is taken at a location within 100 miles of [the non-party's] ... home or place of employment"); *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 704–05, 710–11 (N.D. Tex. 2017) (concluding that "an email address does not qualify as a location or place where compliance is required under Rule 45, although the subpoenaing party and the subpoenaed person could agree to production by electronic means"; and holding that the place of compliance was the physical address listed on the subpoenas); *see also House v. Wayne USA Co., Ltd.*, 2024 WL 4334404, at *2 (E.D.N.Y. Sept. 27, 2024) (holding that the an

> email address or zoom link is not a sufficient "place of compliance" by which geographic location can be measured).
>
> This Court agrees with this weight of authority. Judson's subpoena included only "zoom" as the location or place of compliance. (Doc. No. 25-3 at 2). Since the subpoena that Judson seeks to enforce does not comply with Rule 45, it is beyond the scope of the Court's subpoena power outlined in Rule 45.

*Devine v. Judson,* Civ. A. No. 4:24-CV-2911, 2025 WL 1908565, at *1 (S.D. Tex. July 10, 2025) (quoted verbatim)

Similarly, it is widely recognized that a subpoena duces tecum that fails to list a physical address and provides only an email address as the place of compliance violates Rule 45(c) and is therefore invalid. *See, e.g.*, *Capana Swiss Advisors, AG v. Rymark Inc.*, Civ. A. No. 25-mc-153, 2025 WL 549357, at *6 (E.D. La. Feb. 19, 2025) ("The place of compliance must be a physical 'place,' with geographical limits and capable of being measured according to mileage.") (citing *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 711 (N.D. Tex. 2017)). As with the deposition subpoenas, the document subpoenas at issue violate Rule 45(c) and are therefore facially invalid.

### B. *The Proper Venue for this Motion*

MMA argues that the Eastern District of Louisiana is not the proper District for Morris Bart to bring this motion because, on their face, the subject subpoenas contemplate compliance in the Southern District of Texas, through a "GoToMeeting" link and an email address. This is a dubious proposition at best.

"An emerging consensus in the Fifth Circuit . . . follows the former line of authority, holding that the address listed on the subpoena determines the court of compliance." *Schnelle v. Swift Tech. Servs.*, L.L.C., No. 4:21-mc-02466, 2022 WL 705873, at * 2 (S.D. Tex.

9

Mar. 9, 2022). But what to do when the subpoena, in violation of Rule 45, fails to designate a physical address?

As other courts have done when facing this question, this Court will make the "plausible assumption" that "the subpoenaed person would comply by transmitting the subpoenaed information from the location where that person works or resides as listed on the subpoena." *Herrington*, 354 F. Supp. 3d at 711. It makes the same assumption (which seems more than plausible) that the subpoenaed deponent would comply with remote-means deposition subpoena by testifying from the location listed as her address on the subpoena. As for all four of the subject subpoenas here, the location from which the recipient would comply is New Orleans. This Court is thus the court for the district where compliance is required and is the proper court in which to bring the pending motion to quash.

### C. *Mootness*

MMA, in arguing that the motion to quash should be denied, suggests that, because each of the subject subpoenas had either been complied with or withdrawn, the motion is moot. According to MMA, then, the "issues raised are no longer justiciable, foreclosing subject matter jurisdiction." (Rec. doc. 8). This maneuver is par for the course for MMA (in this District at least). In this Court's prior efforts on a case-by-case basis to get MMA to justify its requests for fees or costs from cases of their former clients settled in this District, MMA would routinely disclaim any such interest in <u>that</u> case, rendering the issue "non-justiciable." *See, e.g.*, *Ricks*, 2024 WL 1750738, at *1.. In fact, it was this tactic that led the Court in *Ricks* to order MMA to provide it with a "a complete and comprehensive list of every

10

case currently pending in this District in which it intends to seek attorneys' fees and/or costs." *Id.* at *2.

As is well known by now, it had been the Court's stated intention all along to determine on a docket-wide basis whether the firm's documented wrongdoing in this District in Hurricane Ida litigation was sufficient grounds to find it had forfeited any rights to fees and costs under Louisiana law. *Ricks v. Imperial Fire & Cas. Ins. Co.*, Civ. A. No. 23-2844 (E.D. La.) (Rec. doc. 25). When MMA attempted, yet again, to frustrate this effort by disclaiming any rights to fees or costs in the *Ricks* matter only, the Court ordered the firm to produce a complete list of cases in which they <u>did</u> intend to seek fees and costs, so that the determination of MMA's rights or forfeiture of those rights could be undertaken as to those cases. Obviously not wanting to endure that particular exercise, the firm declined to present the list the Court had ordered, but said that it might have breach of contract claims against <u>two law firms only</u>, Daly & Black and Galindo Law. (*Id.*, rec. doc. 50). MMA even attached a list of cases, but <u>only</u> cases involving Daly & Black, because MMA represented that it had an agreement with Daly & Black to take over certain cases from MMA. (*Id.*).

Explaining why it declined to provide the list the Court had ordered, MMA went so far as to state "[a]s MMA previously explained in response to the Court's March 6, 2024 Order, MMA does not intend to intervene in any cases pending in this Court, <u>so there is no list to provide reflecting pending EDLA cases in which MMA intends to seek attorney's fees.</u>" (*Id.*) (emphasis added).

Ultimately, though, while the Court decries these tactics, it has no choice but to recognize that MMA's post-issuance actions have, in fact, rendered the pending motion moot, as there does not now appear to be a subpoena to quash.

11

An observation is necessary here given this result. I have no doubt (in fact I expect) that MMA's counsel will claim (before a different court to be sure) that this Court's ruling here, including my detailed efforts at clarifying the meaning of this Court's many orders regarding their client's rights to recover fees in this District, are all without effect because, as a result of the ultimate resolution of the pending motion, this Court somehow lacked jurisdiction over this dispute. That would be legally and factually incorrect, given that this Court was not informed of the withdrawal of the subpoenas until <u>after</u> the present motion was filed, <u>and</u> this is the proper District to determine the propriety of those subpoenas.

I don't think there's anything more that the judges of this Court can say or do to address the profound damage that MMA wreaked in this District – including the conscious decision it made to avoid what it feared was the doomsday scenario that awaited it had it chosen to actually litigate its rights to successor fees here. Every judge in this District (and no one more than me) hopes this ends things as far as MMA's meddling in our cases and with the recoveries of their former clients.

D. <u>Attorneys' Fees and Costs</u>

In its Reply Memorandum, Morris Bart seeks fees and costs associated with litigating these subpoenas in this Court and in the Texas Bankruptcy, based on (1) the facial invalidity of the subpoenas and (2) the fact that they were not withdrawn by MMA until after this motion was filed. (Rec. doc. 11). While there is merit in Morris Bart's complaints, they were made too late. It is axiomatic that a party cannot successfully seek affirmative relief, such

12

as attorney's fees and costs or other sanctions, when it only requested them for the first time in a reply memorandum.[10]

Accordingly, the Court will deny the request for sanctions. While the Court has considered doing so without prejudice to Morris Bart's rights to re-urge the matter in a proper motion, it declines to do so here. The Court believes its findings herein should serve the same purpose as sanctions would – deterrence of future misconduct – and it will be in a position to address any such future misconduct, in line with this Order, should it re-occur in this District. The Court also believes that, given the stay of proceedings in the underlying matter, it is not an efficient use of judicial resources to prolong this matter further.

## IV. CONCLUSION

The Court herein reiterates –in the clearest possible terms and for the final time – the effect of its many rulings: MMA affirmatively and knowingly waived its rights to recover any fees and/or costs, from any person under any theory, arising from its former cases in this District. The reservation of rights provided for in this Court's Order in *Ricks* applied ***only*** to claims against lawyers or law firms with which MMA claimed to have a contractual relationship and did not contemplate any claims against any person or entity to collect successor fees arising from its former cases in this District. And while these facts rendered the subject subpoenas invalid on their face, because those subpoenas were withdrawn or complied with before the Court ruled on this motion, the Court must find that the motion (rec. doc. 1) has been rendered moot and **DISMISS** it as such **WITH PREJUDICE**.

---

[10] *See, e.g., Hamstein Cumberland Music Group v. Williams*, 532 F. App'x 538, 543 n.4 (5th Cir. 2013) (citing *Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 702 (5th Cir. 2010)); *see also Alaniz v. Zamora–Quezada,* 591 F.3d 761, 777 (5th Cir. 2009) (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989)).

New Orleans, Louisiana, this __17th__ day of _____December_____, 2025.

_____
**MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE**